UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SHELDON THOMAS,                                    Civil No. 04-1425 (DSD/JSM)

    Plaintiff,

v.                                                 REPORT AND RECOMMENDATION

LT. WOLFORD,

    Defendant.

Sheldon Thomas, Federal Correctional Institution - Williamsburg, P.O. Box 340, Salters, South Carolina, 29590, Plaintiff, pro se.

Friedrich A. P. Siekert, Assistant United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, for Defendant.

JANIE S. MAYERON, United States Magistrate Judge

    Plaintiff, a federal prison inmate, has filed a Complaint seeking damages for alleged violations of his federal constitutional rights. Defendant has filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. [Docket No. 140]. The matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that defendant's summary judgment motion be granted, and that this action be dismissed with prejudice.

I.    **FINDINGS OF FACT**

    On December 9, 1999, plaintiff was sentenced to 121 months in federal prison following his conviction, in the United States District Court for the District of Nebraska, for Conspiracy to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Declaration of Ann C. Kinyon, ("Kinyon Decl."), p. 2, ¶ 3. [Docket No. 23]. Plaintiff was serving his sentence at the Federal Medical Center in Rochester, Minnesota ("FMC-

Rochester"), at all times relevant to this action.  He is currently incarcerated at the Federal Correctional Institution – Williamsburg, located in Salters, South Carolina.

Defendant Michael Wolford is an employee of the Federal Bureau of Prisons, ("BOP").  He worked at FMC-Rochester from October 21, 2001 until June 2004, when he was transferred to a new BOP assignment in Phoenix, Arizona.  While defendant was working at FMC-Rochester, he was a Lieutenant assigned to the Special Investigative Services ("SIS").  Second Declaration of Michael Wolford, ("2nd Wolford Decl."), p. 1, ¶ 3. [Docket No. 145].  The SIS investigates serious violations of BOP regulations, criminal offenses committed within the prison, and misconduct by BOP employees.  Id., p. 2, ¶ 4.

In 2002, defendant worked on a "major investigation" at FMC-Rochester, involving "the possible introduction of marijuana into the institution."  Id., p. 3, ¶ 7.  The SIS investigation focused on an inmate named Martin, who was believed to have obtained marijuana while in prison.  Id.  Defendant was informed by an unnamed source that plaintiff had been seen with Martin, and defendant believed that plaintiff was associated with Martin.  Id.  The SIS investigation also involved several inmates at FMC-Rochester.  Id., p. 4, ¶ 10.  Some inmates admitted to smoking marijuana, and some inmates tested positive for marijuana usage.  Id.  The investigation led defendant to believe that plaintiff "had active involvement with marijuana in the institution."  Id.  Therefore, defendant set up an interview with plaintiff as part of the SIS investigation.

Before defendant's interview with plaintiff began, defendant decided that plaintiff should be removed from the general prison population, and placed in Administrative Detention ("AD"), immediately after the interview was completed.  Id., pp. 5-6, ¶ 14. In fact,

2

defendant prepared the order that assigned plaintiff to AD before the interview began.  Id.[1]

BOP regulations provide that a prison warden can place an inmate in AD whenever "the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution and when the inmate... [i]s pending an investigation of a violation of Bureau regulations.. [or] [i]s pending investigation... for a criminal act." 28 C.F.R. § 541.22(a).  The regulations also specifically provide that a warden "may delegate authority to place an inmate in administrative detention to Lieutenants."  Id.  The Warden at FMC-Rochester had authorized defendant to place inmates in AD when defendant deemed such action to be appropriate.  2nd Wolford Decl., p. 5, ¶ 11.

Defendant determined that plaintiff should be placed in AD during the Martin marijuana investigation, because "[i]nvestigations involving drugs in the institution almost always raise institutional security and safety issues for staff and inmates (whether they are suspects, informants, witnesses, or otherwise)."  Id., p. 6, ¶ 12.  Defendant stated that "[p]lacement of suspects (and others) in AD serves many purposes including but certainly not limited to the protection of other inmates from retaliatory conduct by the suspect and to ensure the secure, safe, and orderly running of the institution."  Id., ¶ 13.

Defendant interviewed plaintiff on July 31, 2002.  The only other person who was present during the interview, besides plaintiff and defendant), was another FMC-Rochester SIS agent named Todd Miller.  Declaration of Todd Miller, ("Miller Decl."),, p. 7, ¶ 15. [Docket No. 143].  Plaintiff and defendant have provided markedly different accounts of

---

[1] A copy of the Administrative Detention Order is attached to the first Declaration of Michael Wolford. [Docket No. 24.]

3

what transpired during the interview.

Plaintiff says that defendant asked him some questions pertaining to the Miller marijuana investigation, and he told defendant that he did not have any information relevant to the investigation. Complaint, ¶ 3. [Docket No. 1]. According to plaintiff, defendant then lost his temper and began shouting at plaintiff, saying "Don't play word games with me." Id., ¶ 3. Plaintiff alleges that he acted respectfully toward defendant during the interview, and that defendant never suggested there was any reason to believe plaintiff was involved in the Martin marijuana matter. Id., ¶¶ 2-4.[2]

Defendant and Miller have presented a much different version of what happened during the interview. Defendant says that when he started asking questions about the Martin marijuana matter, plaintiff "immediately became belligerent, argumentative and evasive." 2nd Wolford Decl., p. 8, ¶ 16. Defendant denies that he acted "unprofessionally," or that he got angry, raised his voice or threatened plaintiff. Id., p. 9, ¶ 19. Moreover, defendant states that plaintiff did not act respectfully, but rather, plaintiff "yelled," "used profanity," and "was very hostile." Id., ¶ 19. Miller, the only other person who was present during the interview, other than plaintiff, fully corroborates defendant's account of the interview, while contradicting much of plaintiff's description of the interview. Miller Decl., pp. 5-8, ¶¶ 11, 13, 15-18.

The parties agree that at the conclusion of the interview, defendant informed plaintiff that he was being placed in AD pending completion of the Martin marijuana investigation.

---

[2] Plaintiff offered a very limited affidavit in response to defendant's motion for summary judgment. Thus, for plaintiff's version of the facts, the Court has relied on plaintiff's Complaint which he swore to under penalty of perjury pursuant to 28 U.S.C. § 1746.

4

According to Miller, defendant placed handcuffs on plaintiff, and plaintiff "was then escorted to the Segregated Housing Unit by two correctional officers." Id., p. 6, ¶ 11.  Plaintiff remained in AD, in the Segregated Housing Unit at FMC-Rochester, for the next 49 days. In his affidavit, submitted in opposition to defendant's motion for summary judgment, plaintiff stated that he was placed in AD after he exercised his "First Amendment Right to 'freedom of speech' at the meeting with Lt. Wolford."  Plaintiff's Affidavit in Support of Plaintiff Counter Summary Judgment in Opposition to the Defendant's Motion for Summary Judgment, ¶ 1.  [Docket No. 160].

While plaintiff was in AD, defendant continued to investigate the Martin marijuana matter.  During the course of the investigation, defendant talked to FBI agents about the information he had gathered, and whether there was sufficient evidence to bring criminal charges.  On or about August 16, 2002, defendant sent the FBI his complete file on the matter.  2nd Wolford Decl., p. 15, ¶ 29.

Defendant has filed written declarations made by three FBI agents who were aware of the SIS investigation into the Martin marijuana matter.  See Declaration of Jorge Castaneda, ("Castaneda Decl."), [Docket No. 144]; Declaration of David F. Price, ("Price Decl."), [Docket No. 147]; and Declaration of Brian L. Bartholmey, ("Bartholmey Decl."), [Docket No. 148].  Agent Castandeda's Declaration confirms that defendant was "undertaking a major investigation concerning the possible introduction of marijuana" at FMC-Rochester. Castaneda Decl., p. 3, ¶ 7.  Agent Castaneda also confirms that "[b]ased upon information developed during the investigation, [plaintiff] was considered a suspect in the case."  Id., ¶ 8.  Agent Bartholmey further confirms that the FBI monitored the SIS investigation into the Martin marijuana matter, adding, however, that the "the FBI Rochester

office has no record of an investigative case file being opened" by the FBI. Bartholmey Decl., ¶¶ 17, 19. Agent Price recalls discussing the Martin marijuana investigation with defendant on several occasions. Price Decl., ¶ 17. He believes that the matter may have been presented to the United States Attorney's Office, but no criminal prosecution was initiated, and no FBI file was opened. Id., ¶ 18.

On September 17, 2002, the FBI informed officials at FMC-Rochester that no inmates would be criminally prosecuted in connection with the Martin marijuana matter. 2nd Wolford Decl., p. 15, ¶ 30. Later that day, plaintiff was released from AD, and returned to the general prison population at FMC-Rochester. Id., ¶ 31.

Although defendant, as the Warden's designee, was authorized to place inmates in AD, he was not responsible for keeping inmates in AD after they were sent there. The applicable regulations provide that the prison's Segregation Review Official ("SRO") is responsible for reviewing and deciding whether an inmate should remain in AD. 28 C.F.R. § 541.22(c). See also Kinyon Decl., p. 3, ¶ 5. Furthermore, the regulations expressly provide that "[t]he SRO shall release an inmate from administrative detention when reasons for placement cease to exist." Id. Therefore, while defendant was responsible for placing plaintiff in AD, the SRO at FMC-Rochester was legally responsible for keeping plaintiff in AD, and ultimately releasing him from AD.[3]

---

[3] Defendant has stated that:

> "While the Lieutenants have authority to order placement in SHU [segregated housing unit], they do not have unilateral independent authority to order release from AD. Release from AD must be approved by the Captain or in some instances a higher authority."

2nd Wolford Decl., p. 5, ¶ 11.

## II.    PLAINTIFF'S CLAIM

During the course of this lawsuit, plaintiff has attempted to sue several defendants, based on several legal theories. However, most of plaintiff's claims have already been dismissed by prior orders in this matter. See Report and Recommendations of the undersigned Magistrate Judge dated February 7, 2005, [Docket No. 29], and December 13, 2005, [Docket No. 67], and Orders of District Court Judge David S. Doty, dated March 29, 2005, [Docket No. 36], and January 25, 2006, [Docket No. 73].) As of now, plaintiff has only one surviving claim against one remaining defendant, Wolford.

The sole surviving claim in this case is a claim brought under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), for an alleged violation of plaintiff's constitutional rights. Plaintiff contends that defendant Wolford violated his constitutional rights by retaliating against him when he attempted to exercise his constitutional rights during the SIS interview on July 31, 2002. More specifically, plaintiff contends that during the interview, he attempted to exercise his First Amendment right to free speech, and his Fifth Amendment right to avoid self-incrimination, and that in response, defendant became angry with him and retaliated against him by assigning him to AD. In short, plaintiff claims that defendant infringed upon his First and Fifth Amendment rights by retaliating against him for exercising those rights.[4]

---

[4]   As defendant has correctly pointed out, (see Memorandum in Support of Motion for Summary Judgment, [Docket No. 132], pp. 20-22), plaintiff's Complaint does not explicitly identify the constitutional rights on which his retaliation claim is based. However, in a memorandum filed in opposition to an earlier motion to dismiss in this case, plaintiff suggested that the constitutional basis for his retaliation claim is his Fifth Amendment right to avoid self-incrimination. See "Response In Opposition To Motion To Dismiss," [Docket No. 30], pp. 13-14. In a Report and Recommendation addressing that earlier motion to dismiss, this Court specifically recognized that plaintiff appeared to be claiming that he was retaliated against for exercising his constitutional right to remain silent. See Report and

Plaintiff is seeking compensatory damages for the 49 days that he spent in AD, and for the wages that he lost because he was unable to perform his prison work assignment during those 49 days.  He is also seeking an award of punitive damages.

## III.  STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celeotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1992).  "[S]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex, 477 U.S. at 327.  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"

---

Recommendation dated February 7, 2005, [Docket No. 29] , pp. 20-21.  The District Court Judge's subsequent order also noted plaintiff's constitutional right to remain silent.  See Order dated March 29, 2005, [Docket No. 36], pp. 2-3.  In addition, plaintiff's response to the currently pending summary judgment motion expressly alleges that defendant "willfully retaliated against Plaintiff for exercising his constitutional right to 'freedom of speech.'"  See Plaintiff's Counter Summary Judgment In Opposition To The Defendant's Motion For Summary Judgment, [Docket No. 159], p.2.  Therefore, even though it is true that plaintiff's Complaint does not explicitly allege that his retaliation claim is predicated on his First and Fifth Amendment rights, the Court will give plaintiff the benefit of liberal construction, and will, for present purpose, assume that he is indeed claiming that defendant retaliated against him for attempting to exercise those rights.  This assumption will cause no prejudice to defendant because (a) defendant has already anticipated that plaintiff's retaliation claims were grounded on his First and Fifth Amendment rights, (see Memorandum in Support of Motion for Summary Judgment ("Def.'s Mem."), [Docket No. 132], pp. 22-39), and (b) the Court finds that plaintiff's retaliation claim is unsustainable in any event, for the reasons discussed below.

DePugh v. Smith, 880 F. Supp. 651, 656 (N. D. Iowa 1995) (quoting Anderson, 477 U.S. at 248).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed. Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson, 477 U.S. at 256; Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995). "A genuine issue of material facts exists if there is a dispute about a fact material to the outcome of the case, and the dispute is genuine in that a reasonable jury could return a verdict for either party." Jones v. Minnesota Dept. of Corrections, No. 06-3900, __ F.3d __, (8th Cir. Jan. 9, 2008), 2008 WL 80576 at *3.

"The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial." Minnesota Laborers Health & Welfare Fund v. Swenke, Civil No. 02-992 (RHK/AJB) (D. Minn. 2003), 2003 WL 21521755 at * 1 (citations omitted). The non-moving party "must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy." Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995). If the evidence is "merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

## IV.   DISCUSSION

### A.   Retaliation Cause of Action

"'It is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable ..., even if the act when taken for a different reason, would have been proper.'" Craft v. Wipf, 836 F.2d 412, 419 (8th Cir. 1987), quoting Buise v. Hudkins, 584 F.2d 223, 229 (7th Cir. 1978), cert. denied, 440 U.S. 916 (1979). Our Court of Appeals has frequently reiterated that prison officials can be held liable for actions taken against a prisoner, if the purpose of such actions is to punish the prisoner for exercising his or her constitutional rights.

"'Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason.'" Nei v. Dooley, 372 F.3d 1003, 1007 (8th Cir. 2004), quoting Cody v. Weber, 256 F.3d 764, 770-71 (8th Cir.2001). As District Judge Doty explained in a previous order in this case, "[i]n a retaliation case, the actionable constitutional violation lies not in the retaliatory conduct of the defendant, but rather in the defendant's intent to impede the plaintiff's constitutionally protected behavior." Order dated March 29, 2005, p. 2, citing Nei, supra. [Docket No. 36].

In some Eighth Circuit retaliation cases, the inmate has claimed that he was subjected to disciplinary charges and sanctions because he tried to exercise some right protected by the Constitution, most commonly, the right to file grievances. See e.g. Hartsfield v. Nichols, No. 06-3450, __ F.3d __ (8th Cir. Jan. 8, 2008), 2008 WL 65598 at *2 ("[a]n inmate may maintain a cause of action for retaliatory discipline under 42 U.S.C. § 1983 where a prison official files disciplinary charges in retaliation for an inmate's

10

exercise of constitutional rights"); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (filing disciplinary charges against a prisoner, "is actionable under section 1983 if done in retaliation for his having" attempted to exercise his right to file a grievance); Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990) (same).

In other retaliation cases, inmates have complained about being transferred to a less desirable facility after attempting to exercise some constitutional right. See e.g. Murphy v. Missouri Dept. of Correction, 769 F.2d 502, 503 (8th Cir. 1985) ("[w]hile a prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer..., prison officials do not have the discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution") (citations omitted); Goff v. Burton, 7 F.3d 734, 737 (8th Cir. 1993) ("a prisoner cannot be transferred in retaliation for the exercise of a constitutional right"), cert. denied, 512 U.S. 1209 (1994); Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir. 1991) (same); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994), cert. denied, 515 U.S. 1145 (1995) (same).

In order to sustain a retaliation claim, a prisoner must show that the primary purpose of the defendant's alleged retaliatory action was to punish the prisoner for attempting to exercise his constitutional rights. As explained by the Court of Appeals, "[t]o succeed on a claim of retaliatory transfer or retaliatory discipline, an inmate must prove that, but for an unconstitutional retaliatory motive, the transfer or discipline would not have occurred." Johnson v. Esry, No. 98-2573 (8th Cir. 2000), 2000 WL 375269 at *1 (unpublished opinion) (emphasis added). Thus, the prisoner must show that he would not have suffered the alleged retaliatory mistreatment at issue "but for" the defendant's retaliatory motive. Kind

v. Frank, 329 F.3d 979, 981 (8th Cir. 2003) (prisoner's retaliation claim was properly dismissed where he "failed to show that but for his assertions of his constitutional rights, he would not have been transferred"); Eaton v. Dooley, No. 992784, (8th Cir. 2000), 2000 WL 1121369 *1 (unpublished opinion) (prisoner's "claim that he was transferred and his property was confiscated in retaliation for filing his own lawsuits" was unsustainable because he "did not show that the transfer would not have occurred but for the lawsuits"); Sisneros v. Nix, 95 F.3d 749, 752 (8th Cir. 1996) ("[i]n a retaliatory transfer case, 'the burden is on the prisoner to prove that but for an unconstitutional, retaliatory motive the transfer would have not occurred'"), (quoting Goff, 7 F.3d at 738); Hazen v. Reagen, 16 F.3d 921, 926 (8th Cir. 1994) ("for an inmate to prove that his transfer was in retaliation for the exercise of First Amendment rights, he must establish that he would not have been transferred 'but for' the retaliatory reason"); Orebaugh, 910 F.2d at 529 (a prisoner must satisfy the "heavy burden of showing that the prison officials who disciplined him had an impermissible motive for doing so, and that but for this impermissible motive, the disciplinary charges would not have been brought").

    **B.**    **Plaintiff's Retaliation Claim**

In this case, plaintiff claims that defendant retaliated against him for exercising his constitutional rights during the SIS interview that defendant conducted on July 31, 2002. Plaintiff contends that during the course of that interview, he exercised his First Amendment right to free speech, and his Fifth Amendment right to remain silent, presumably so that he would not have to provide self-incriminatory answers to defendant's questions. Plaintiff further contends that after defendant became angry when he exercised his constitutional rights during the interview, defendant assigned plaintiff to AD because of, and in retaliation

for, plaintiff's constitutionally protected actions during the course of the interview.

In support of his motion, defendant proffered a number of grounds for seeking summary judgment, including the initial argument that plaintiff's actions during the interview were not constitutionally protected, because in that setting, plaintiff had no Fifth Amendment right to remain silent, and he had no First Amendment right to speak or not speak as he pleased.  See Def.'s Mem, pp. 20-33.  The validity of this first argument need not be addressed, however, because plaintiff's retaliation claim cannot survive defendant's summary judgment motion, even if plaintiff did possess the underlying constitutional rights on which his retaliation is predicated.[5]  Thus, for present purposes, the Court will assume that during the course of the SIS investigatory interview at issue, he had a constitutional right to respond and not respond to defendant's questions as he did.

The Court must also assume, in the context of a motion for summary judgment, that plaintiff's account of what actually occurred during the interview is accurate.  Mershon v. St. Louis University, 442 F.3d 1069, 1075 (8th Cir. 2006) ("[i]n the summary judgment context, we accept... [the non-moving party's] statements of fact and do not resolve credibility disputes").  Therefore, even though defendant's description of the interview is

---

[5] The Court notes that in Phelps v. U.S. Government, 15 F.3d 735, 739 (8th Cir. 1994), cert. denied, 511 U.S. 1114 (1994), the Eighth Circuit said that "[b]efore an inmate can be compelled to provide testimony in a prison disciplinary hearing that might incriminate him in later criminal proceedings, the inmate must be offered whatever immunity is required to supplant the privilege [against self-incrimination] and may not be required to waive such immunity."  The Court further notes that, as a general rule, prisoners retain their First Amendment rights while in prison.  See Beard v. Banks, 126 S.Ct. 2572, 2585 (2006) ("it is well settled that even the 'worst of the worst' prisoners retain constitutional protection, specifically including their First Amendment rights"); Pell v. Procunier, 417 U.S. 817, 822 (1974) ("a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system").

fully corroborated by Miller's Declaration, and plaintiff's account is not, the Court nevertheless accepts plaintiff's version of what happened. Accordingly, the Court accepts as true the purpose of this motion that (1) plaintiff had no information relevant to the Martin marijuana investigation, and thus he did not withhold any relevant information from defendant; (2) defendant "became extremely angry and lost his composure, shouting and screaming at plaintiff because he could offer no information" relevant to the Martin marijuana investigation; (3) despite defendant's anger and lack of professionalism, plaintiff remained entirely respectful toward defendant during the interview; and (4) following his interview, plaintiff was placed in AD. Complaint, pp. 1-2, ¶¶ 1-3; 2nd Wolford Decl., p. 9, ¶¶ 16, 17.)

However, the dispute about what happened during the interview does not preclude summary judgment, because "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Mershon, 442 F.3d at 1073, quoting Anderson, 477 U.S. at 242. In this case, even if plaintiff's account of the SIS interview is accepted as true, his retaliation claim still cannot survive defendant's summary judgment motion, because the factual dispute about what occurred during the SIS interview is not material to the outcome of the case.

The fatal flaw in plaintiff's retaliation claim is that he cannot show that he would not have been placed in AD "but for" defendant's alleged desire to punish him for exercising his constitutional rights during the SIS interview. Defendant has presented substantial credible evidence establishing that plaintiff would have been placed in AD regardless of what happened during the SIS interview, and plaintiff has presented no evidence to rebut that critical point. The evidence shows that defendant had viable reasons to believe that

plaintiff might have possessed information relevant to the Martin marijuana investigation. An inmate or staff member told defendant that he or she had seen Martin and Thomas together at FMC-Rochester.  2nd Wolford Decl., p. 3, ¶ 7.  Two sources indicated that plaintiff knew the inmate who allegedly introduced marijuana into FMC-Rochester, (presumably meaning Martin), and one source indicated that an inmate, (again, presumably Martin), was selling marijuana for plaintiff.  Id., pp. 4-5, ¶ 10; see also Miller Decl., p. 3, ¶ 7, (indicating that Miller believed plaintiff was "associated with" Martin).)  Based on that information, defendant reasonably believed plaintiff "to be a suspect in the case."  2nd Wolford Decl., p. 5, ¶ 10.  Plaintiff claims that, in fact, he was not involved in the Martin marijuana matter.  However, the evidence clearly shows that defendant reasonably believed (rightly or wrongly) that plaintiff was involved in the matter.  There is no evidence to the contrary.

The mere fact that defendant reasonably believed plaintiff was involved in the Martin marijuana matter gave defendant ample justification to place plaintiff in AD, pursuant to 28 C.F.R. § 541.22.  That regulation says that an inmate can be assigned to AD during a pending investigation of a possible BOP rule violation, or a possible crime, if the inmate's presence in the general prison population "poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution."

It is self-evident that a prison investigation involving illegal drug usage would generate safety and security concerns.  An inmate who has been directly implicated in illegal drug usage would pose an obvious threat to other inmates who knew about it and might be called upon to provide evidence against the wrongdoer.  Prison investigators certainly would want to separate an accused wrongdoer from a potential witness against

him. Conversely, investigators would have a legitimate interest in separating a potential witness from an accused wrongdoer who might try to influence the witness's testimony. Thus, it is undisputed by plaintiff, that "[i]nvestigations involving drugs in the institution almost always raise institutional security and safety issues for staff and inmates (whether they are suspects, informants, witnesses, or otherwise)." 2nd Wolford Decl., p. 6, ¶ 12.

It is also undisputed, that:

> "Standard practice dictates that suspects in drug investigations be questioned and immediately placed in AD pending the outcome of the investigation. Placement of suspects (and others) in AD serves many purposes including but certainly not limited to the protection of other inmates from retaliatory conduct by the suspect and ensure the secure, safe, and orderly running of the institution."

Id., ¶ 13.

In summmary, the undisputed evidence is that defendant determined, prior to the SIS interview on July 31, 2002, that plaintiff would be placed in AD immediately after the interview concluded, regardless of what took place in during the interview. Id., ¶ 14. Indeed, the only relevant evidence in the record shows that defendant not only decided before the interview that plaintiff would be placed in AD, but he also actually prepared the order placing plaintiff in AD before the interview began. Id. Plaintiff may not believe that is true, but he has presented no evidence contradicting defendant's sworn statements regarding the timing of his decision to place Plaintiff in AD. Thus, the undisputed evidence of record shows that defendant made the decision to put plaintiff in AD before the SIS interview on July 31, 2002.

However, even if plaintiff's AD placement had not been pre-determined before the SIS interview, his current retaliation claim still could not be sustained. The record shows that defendant had ample cause to assign plaintiff to AD regardless of what happened

16

during the SIS interview. Defendant reasonably believed that plaintiff was somehow involved in, or had knowledge of, illegal drug usage at FMC-Rochester. For that reason alone, and without regard to what plaintiff may have said or not said during the SIS interview, defendant had sufficient reason to separate plaintiff from the general prison population while the Martin marijuana matter was still under investigation. If plaintiff was somehow personally involved in illegal drug usage, as defendant suspected, then it was proper to isolate him so he could not influence the testimony of inmates who might be asked to testify against him. Conversely, even if plaintiff was merely a potential witness, it still was proper to isolate him so he would not be influenced, threatened or harmed by other inmates who he might have been able to incriminate. Thus, the Court finds that defendant had a valid reason to remove plaintiff from the general prison population, regardless of what happened during the SIS interview.

Our Court of Appeals has acknowledged that it is not easy for a prisoner to show that a prison official's actions were motivated solely by a retaliatory desire to harm the prisoner. "The plaintiff-inmate has a heavy evidentiary burden to establish a prima facie case" of retaliation, and "[m]erely alleging that an act was retaliatory is insufficient." Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007). See also Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006) (a prisoner asserting a retaliation claim has "a substantial burden to prove that retaliation was the actual motivating factor" for the defendant's actions, and the claim will be dismissed where the prisoner "has not come forward with any evidence that the prison officials were motivated solely by an intent to retaliate against him").

However, in this case, plaintiff has presented nothing more than a conclusory

allegation of retaliation. Defendant, however, has shown that plaintiff would have been assigned to AD, regardless of what he said or did not say during the SIS interview, simply because of his alleged involvement in, or knowledge of, the Martin marijuana matter. Thus, the Court finds, as a matter of law, that plaintiff cannot satisfy his "substantial burden" of showing that he would not have been sent to AD "but for" his attempt to exercise his constitutional rights. Because plaintiff cannot satisfy the "but for" requirement, defendant is entitled to summary judgment on plaintiff's retaliation claim.[6]

## V. CONCLUSION

Based on the evidence presented in this case, the Court concludes that plaintiff's retaliation claim against defendant must be dismissed on summary judgment. While there obviously is a significant factual dispute about what actually happened during the SIS interview on July 31, 2002, that dispute is not material to the present summary judgment motion. Defendant has amply demonstrated that he had other good reasons, having nothing to do with what may have happened during the interview, for removing plaintiff from the general prison population while he pursued the Martin marijuana investigation. In light of the undisputed facts of record, no rational jury could conclude that defendant would not have assigned him to AD "but for" defendant's allegedly retaliatory desire to punish plaintiff for allegedly exercising his constitutional rights during the SIS interview.

In short, this is a case in which the evidence "is so one-sided that one party" – namely defendant – "must prevail as a matter of law." Anderson, 477 U.S. at 252; see also, Foster v. Metropolitan Airports Commission, 914 F.2d 1076, 1082 (8th Cir. 1990)

---

[6] Having determined that plaintiff cannot satisfy the "but for" requirement of his retaliation claim, there is no need to discuss qualified immunity, or any of the other arguments that defendant has raised in support of his motion.

(upholding summary judgment where no juror could reasonably find in favor of the non-moving party). Therefore, the Court recommends that defendant's motion for summary judgment be granted, and that this action be dismissed with prejudice.

## VI. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Defendant's Motion For Summary Judgment, (Docket No. 140), be GRANTED; and

2. This action be DISMISSED WITH PREJUDICE.

Dated: February 8, 2008

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by February 26, 2008, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.